UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| PAYNETWORX LLC,<br><br>Plaintiff,<br><br>vs.<br><br>PATHWARD, NATIONAL ASSOCIATION F/K/A METABANK NATIONAL ASSOCIATION,<br><br>Defendant. | CIV. 4:24-cv-00605-SDJ |

**PATHWARD N.A.'S SUPPLEMENTAL RESPONSE TO PAYNETWORX LLC'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

Defendant Pathward N.A., through the counsel of record, submits this Supplemental Response in opposition to Plaintiff Paynetworx LLC's Emergency Motion for Temporary Restraining Order:

**SUPPLEMENTAL GROUNDS TO DENY PNX'S
REQUEST FOR INJUNCTIVE RELIEF**

1. Pathward N.A. ("Pathward") and Paynetworx LLC ("PNX") entered into a Merchant Financial Services Agreement dated June 23, 2020 (*hereinafter*, "Agreement"), which Agreement is at the center of this dispute and PNX's Emergency Motion for Temporary Restraining Order (the "Motion"). The Agreement is attached to PNX'S Emergency Motion for Temporary Restraining Order as Exhibit B.

**A.      The plain language of the Agreement permits Pathward to terminate PNX.**

2.      The Agreement required, among other things, that PNX comply with "all Applicable Laws and regulations . . . including expressly any Payment Company Rules . . . (including but not limited to, the NACHA Operating Rules)." Agreement § 5.11.

3.      In addition, PNX and its partners are required to comply with all "generally applicable Bank Policies, procedures, or guidelines" communicated to PNX. Agreement § 5.11.

4.      The term "Payment Company Rules" is specifically defined in the Agreement as "the bylaws, rules, regulations, orders and interpretations issued by the respective Payment Company [*e.g.* Mastercard, Visa] applicable to the performance of Transaction Card Services and related matters . . ."

5.      During the hearing on PNX's Motion, PNX argued that Pathward "wrongfully" terminated the Agreement without providing a "Notice of Default," presumably to support the first element of injunction relief—namely, substantial likelihood of success on the merits. However, PNX engaged in activity that violated Payment Company Rules, which does not require *any* written notice:

> 8.2.5   Bank Termination. Bank may terminate this Agreement, in its sole discretion, if Company (1) engages in fraudulent activity and fails to cease such activity upon written notice from Bank, (2) engages in activities that violate Payment Company Rules or cause Bank to repeatedly and materially violate the Payment Company Rules, (3) engages in any other activities that may or do result in undue material economic hardship or material damage to the goodwill of the Payment Companies and Company fails to take corrective action. Company shall include provisions in the Merchant Agreement that permit Company to terminate the contract if the Merchant participates in any of the activities described in this Section.

6.      While PNX has ceased processing for certain cannabis-related merchants (with the exception of NanoKard) and reimbursed Pathward for network fines to date, the ongoing

onboarding of illegally operating merchants has caused the bank to suffer significant reputational damage and scrutiny from both the card networks and the Office of the Comptroller of the Currency ("OCC"). Even if Pathward had afforded PNX a 30-day cure period for its most recent defaults, reimbursing the bank for fines and shutting down illegally operating merchants after the fact would not have cured the breach. PNX has continued to engage in substantially similar breaches (namely onboarding illegally operating merchants). Further, given the extent and ongoing nature of these breaches, the non-monetary damages (reputational damages/risk of enforcement action, etc.) suffered by the bank are not capable of being cured by PNX and certainly not within 30 days.

7. The Agreement also incorporates an ACH Processing Agreement as Schedule 4.6 to the Agreement, which articulates responsibilities between the parties with respect specifically to the ACH network rules imposed by the National Automated Clearing House Association ("NACHA").

8. Under the ACH Processing Agreement terms, one of PNX's responsibilities is to ensure that transaction entries are "accurate, complete, authentic, and comply with the Rules and Applicable Law." Agreement, Sched. 4.6 Part III(a).

**B.  PNX does not have an unconditional right to compel Pathward to process Merchant Payments, even if the Agreement had not been terminated.**

9. Relatedly, Pathward's obligation to process any given transaction is contingent upon, among other things, PNX's "compliance with the requirements set forth in" the ACH Processing Agreement and the Operating Rules and Guidelines of NACHA. Agreement, Sched. 4.6 Part IV (b)(1).

10. In other words, even without termination of the Agreement, Pathward has no obligation to process payment transactions on behalf of PNX merchants that do not comply with applicable rules and laws.

**C.   Pathward was permitted to terminate without notice, but also provided Notice in June 2022 of PNX's defaults.**

11. Under the terms of the Agreement, Pathward "shall have the right, in its sole discretion, . . . to terminate [the] Agreement *without providing* a notice and opportunity to cure under this Section 8.2.1. in the event of a default by Company that is substantially similar to a previous default that was cured by Company following the provision of notice and an opportunity to cure under this Section 8.2.1." Merchant Financial Services Agreement dated June 23, 2020 § 8.2.1 (emphasis added).

> to the nondefaulting Party's reasonable satisfaction by the end of the notice period. In the event of a monetary default, such notice shall provide a three (3) day cure period. An "Event of Default" means a material, uncured default in the performance of any duty or obligation or a material, uncured breach of any representation or warranty under this Agreement. Notwithstanding the foregoing, in the event Bank is the terminating party, it shall have the right, in its sole discretion, to terminate this Agreement without providing a notice and opportunity to cure under this Section 8.2.1 in the event of a default by Company that is substantially similar to a previous default that was cured by Company following the provision of notice and an opportunity to cure under this Section 8.2.1.

12. On March 28, 2024, Pathward terminated the Agreement without *further* notice or opportunity to cure *pursuant to its discretion under Section 8.2.1 of the Agreement*. *See* Letter from Kelly Neubecker, V.P. & Sr. Legal Counsel to Trent Voigt, Paynetworx LLC (Mar. 28, 2024) (Doc. 2 at App. 094 (Exhibit C to Or. Ver. Petition)) (*hereinafter*, "Termination Letter").

13. Prior to terminating the Agreement, in June 2022, Pathward had provided PNX notice of breach of the Agreement and an opportunity to cure the same under Section 8.2.1 of the Agreement.

14.     Specifically, on June 3, **2022**, Pathward provided written notice to PNX of *three breaches* of the Agreement, as well as identified concerns of a fourth possible breach of the Agreement. A true and correct copy of the June 3, 2022 Correspondence to PNX, attention Trent Voigt, is attached hereto as **Exhibit E** and is incorporated by this reference as if fully set forth herein.

15.     In the June 3, 2022 Correspondence (the "Notice") Pathward notified PNX of the following breach:

- Origination of ACH transactions for merchants (cannabis) prohibited under Bank Policies (Section 5.11)

16.     The Notice provided PNX six months to complete a performance improvement plan (*i.e.*, cure the breaches), which period exceeded the minimum 30-day cure period provided in the Agreement.

**D.     PNX continued to default under the Agreement and continued to cause reputational and financial harm to Pathward.**

17.     Following transmittal of the Notice to PNX and the completion of the cure period specified in the Notice, Pathward received information indicating the PNX had again breached the Agreement in a substantially similar manner as identified in the Notice.

18.     On February 9, 2024, Pathward received an assessment notice from Mastercard which provided evidence that merchant QuickCard EWallet was accepting Mastercard cards as payment for the sale of cannabis. A true and correct copy of the February 9, 2024 Mastercard Noncompliance letter is attached hereto as **Exhibit F** and is incorporated by this reference as if fully set forth herein.

19.     QuickCard EWallet was, at the time, a merchant receiving transaction card services from Pathward through the Agreement with PNX.

20. As a result of the breaches by PNX's merchant, as identified in the correspondence, Mastercard fined **Pathward** $510,000.00. As noted during the hearing on PNX's Motion, Section 8.3.3 provides that the Wind Down Period shall not be applicable in the event PNX engages in an ongoing Event of Default that presents a material reputational or financial risk to Pathward. Surely, being faced with hundreds of thousands of dollars in fines creates a financial risk to the bank:

> discretion. The Wind Down Period described in Section 8.3 shall not be applicable in the event that (1) Bank is compelled to discontinue the services described herein prior to the conclusion of the Wind Down Period by (a) any Regulatory Authority, (b) Applicable Law, or (c) any Payment Company, or (2) an ongoing Event of Default exists that presents a material reputation or financial risk to Bank and, in the case of financial risk, such financial risk cannot be reasonably mitigated by Company's reserves.

Agreement, § 8.3.3 (emphasis added).

21. The breach identified by Mastercard—in particular, the use of card services to process cannabis transactions—was substantially similar to a prior breach identified in the June 2022 Notice, and likewise violated Section 5.11 of the Agreement.

22. The March 2024 Termination Letter specifically referenced the Mastercard assessment notice as a basis for termination.

23. In addition to the Mastercard assessment notice, Pathward received notices from VISA of suspected violations of its rules relating to PNX merchants processing transactions for the sale of cannabis on February 14, 2024, and again, after termination, on April 15, 2024. True and correct copies of the VISA notices of suspected violations are attached hereto as **Exhibit G** and Exhibit H to this supplemental pleading, and are incorporated by this reference as if fully set forth herein.

24. The repeated and apparently ongoing onboarding of merchants operating in illegal areas creates a significant financial risk to Pathward.

25. Further, the illegally operating merchants cause substantial reputational harm to Pathward because, as illustrated by the attached card company notices, the card companies consider and treat those merchants as Pathward's merchants.

26. As such, in addition to the basis for termination of the Agreement cited in the Termination Letter, Pathward has authority to terminate the Agreement under Section 8.2.5 because PNX's merchants have "engage[d] in activities that violate Payment Company Rules or cause [Pathward] to repeatedly and materially violate the Payment Company Rules." Agreement § 8.2.5.

27. Notably, section 8.2.5(2) does not expressly require notice or opportunity to cure.

28. Under the terms of the Agreement, Pathward was entitled terminate the Agreement due to PNX's breaches and its merchants' activities, and therefore termination of the Agreement was not wrongful or improper.

## CONCLUSION

As summarized in Pathward's Response to PNX's Emergency Motion for Temporary Restraining Order, the Exhibits presented during the Hearing, and this Supplement, PNX is not entitled to the injunctive relief requested because Pathward properly terminated Agreement after multiple and ongoing defaults committed by PNX. Even if Pathward's termination of PNX was improper (it was not), the termination does not present an imminent risk of irreparable harm to PNX because its allegations surround the loss of revenue. No Merchants or other customers have threatened to terminate their relationship and no Merchants have filed any sort of request for relief arising out of PNX's concerns. Finally, any risk of harm posed to PNX is substantially less than the resulting damage to Pathward and can be redressed through monetary damages.

Dated this 10th day of July, 2024.    Respectfully submitted,

/s/ Rusty J. O'Kane
_____
Mitchell A. Peterson (*admitted Pro Hac Vice*)
Joel R. Rische (*admitted Pro Hac Vice*)
**DAVENPORT, EVANS, HURWITZ & SMITH, LLP**
206 West 14th Street
PO Box 1030
Sioux Falls, SD 57101-1030
Telephone: (605) 336-2880
Facsimile: (605) 335-3639
mpeterson@dehs.com
jrische@dehs.com


Rusty J. O'Kane
State Bar No. 24088149
rusty.okane@wickphillips.com
J. Mason Castaldo
State Bar No. 24136778
mason.castaldo@wickphillips.com

**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Facsimile: (214) 692-6255

***ATTORNEYS FOR DEFENDANT***

<u>**CERTIFICATE OF SERVICE**</u>

I certify a true and correct copy of the foregoing document was served on counsel of record in accordance with the Texas Rules of Civil Procedure on July 10, 2024.

/s/ *Rusty J. O'Kane*
_____
Rusty J. O'Kane